Filed 7/31/13  In re Emily Z. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re EMILY Z. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B246468 (Super. Ct. No. JV50456) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. MARTIN Z., Defendant and Appellant. | |

Martin Z., father of three-year-old Vicente and eight-year-old Emily, appeals from the juvenile court's order denying his petition for modification (Welf. & Inst. Code, § 388)[1] and the termination of his parental rights (§ 366.26).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2011, the San Luis Obispo County Department of Social Services (DSS) filed a petition alleging that father and mother failed to protect and support one-year-old Vicente and five-year-old Emily.  (Welf. & Inst. Code, § 300,

---

[1] All statutory references are to the Welare and Institutions Code unless otherwise stated.  The juvenile court also denied mother's section 388 petition and terminated her parental rights.  She is not a party to this appeal.

subds. (b) & (g).)  The petition alleged that mother was driving while under the influence of methamphetamine on November 1, 2011, with Vicente, who was riding unrestrained, in a car seat.  Mother was six months' pregnant.  A deputy sheriff contacted DSS and arrested mother for being under the influence of a controlled substance, methamphetamine (Health & Saf. Code, § 11550, subd. (a)), and child endangerment likely to produce great bodily harm or death (Pen. Code, § 273a, subd. (a)).  DSS took Vicente and Emily into protective custody.  Mother's criminal record included a February 2011 spousal battery conviction.  (Pen. Code, § 243, subd. (e).)

The November 4, 2011, detention report stated that mother and the children sometimes lived with father, in violation of a court order prohibiting mother from having contact with father.  Father knew mother had a recent history of substance abuse, but could not tell when she was using drugs.  On November 4, the juvenile court authorized the children's continued detention, and suitable placement at the discretion of DSS, with supervised visits for mother and father.

The November 30, 2011, jurisdictional and dispositional report stated that father and other family members said they could not prevent mother from taking the children.  Emily told the DSS social worker her parents got into physical fights.  During the December 21, 2011, jurisdictional and dispositional hearing, DSS reported the children would be placed in the home of a relative on December 23.  Both parents submitted to the DSS recommendation that the children remain in foster care with reunification services.  The court authorized supervised visits for each parent, once or twice weekly, for one to four hours, subject to the discretion of DSS to increase visitation if appropriate.  Among other things, father's case required that he stay "free from illegal drugs"; show he could "live free from drug dependency"; and avoid "arrests and convictions."  The court scheduled the three-month and six-month review hearings for March 21, 2012, and June 20, 2012.  Further, the court provided written notice to the parents that because the children were taken into protective custody when Vicente was less than three years old, the parents might (1) "only have . . . six months to reunify with" the children; (2) the parents' "[f]ailure to participate regularly and make substantive

2

progress in court-ordered . . . programs may result in the termination of reunification services"; and (3) the court could terminate parental rights and select adoption as the children's permanent plan at the six-month hearing.

Both parents attended the March 21, 2012, three-month review hearing. The social worker advised the juvenile court that father had visited the children only once. Both parents were living outside the County of San Luis Obispo (SLO). Father had made no progress on his case plan. On March 1, mother gave birth to a son, Juan. He and mother tested positive for methamphetamine. On March 5, Monterey County Department of Social Services, Family and Children's Services (Monterey DFCS) took Juan into protective custody.

In early April 2012, the children's caregiver advised DSS she could no longer care for them. Mother and father had advised DSS that they planned to stay in Monterey County. DSS filed a section 387 petition on April 6. On April 12, DSS filed an amended petition stating that it moved Emily and Vicente into a foster care home in Monterey County on April 9. On April 12, the juvenile court conducted section 387 detention proceedings, and authorized suitable placement for both children, at the discretion of DSS, as well as supervised visits and reunification services.

Emily was excited about moving to Monterey County because she would be closer to her parents. Vicente and Emily were doing well in their Monterey County foster home. In May, DSS received notice that the parents were living in Madera County.

On May 24, 2012, the juvenile court conducted disposition proceedings on the section 387 petition. The parents did not attend, but their attorneys were present. DSS reported that neither parent had made any progress on their case plan. Emily and Vicente remained in their Monterey County foster care home, under the jurisdiction of SLO. The parents did not visit the children consistently and their visitation remained supervised. DSS also reported that on March 12, 2012, father was arrested in Monterey County, for possession of drug paraphernalia. (Health & Saf. Code, § 11364.) The juvenile court ordered father to obtain a substance abuse assessment and treatment.

3

*Six Month Status Review Hearing (July 13, 2012)*

The June 20, 2012, six month status review report recommended the termination of reunification services for both parents. DSS indicated that father had visited the children three times in six months. Father had not complied with his SLO case plan or his Monterey County plan. (Father's Monterey DFCS case plan concerned his infant son, Juan.) In May, the SLO social worker contacted father and inquired about his drug treatment. Father said he made two appointments for a substance abuse assessment but could not arrive on time. Emily and Vicente were doing well in their foster care home.

On July 13, 2012, the juvenile court heard contested six-month review proceedings. The DSS social worker testified that both parents failed to comply with their case plans in SLO and Monterey Counties. Father testified that he was employed full-time in Chowchilla, and the available domestic violence program was too far away. He was assessed for drug treatment in Madera County but could not attend the recommended classes because they conflicted with his work schedule. He did not contact his social workers regarding difficulties he encountered in complying with his case plan. He knew that the dependency case was a six-month case because the children were detained when Vicente was less than three years old.

The juvenile court found that father failed to comply with his case plan; his visits were at best "sporadic"; and he did not seek substance abuse treatment, or help from his social workers to comply with his case plan or visit his children regularly. (It also made findings regarding mother.) The court terminated reunification services, scheduled a section 366.26 permanency planning hearing for Emily and Vicente and authorized monthly supervised visits for each parent.

*January 14, 2013 Permanency Planning Hearing*

On November 7, 2012, DSS filed a section 366.26 report recommending that the juvenile court select adoption as the permanent plan for Emily and Vicente, and terminate parental rights. On December 5, 2012, father filed a section 388 petition,

4

asking the court to change its orders terminating reunification services and setting a section 366.26 hearing. Mother also filed a section 388 petition.

During contested proceedings on January 14, 2013, the juvenile court considered the section 388 petitions and the permanent plan. DSS social worker Lori Hunsted testified that on August 31, 2012, father started attending monthly supervised visits with the children on a regular basis. Hunsted opined that Emily and Vicente needed stability and permanency, and it would not be in their best interests to provide further reunification services to father. Emily was excited about being a member of her foster/adopt family.

Father testified that he attended 25 of 40 required drug and alcohol treatment sessions, as well as daily narcotics anonymous or alcoholics anonymous meetings. He also took random drug tests, and received results, with one exception in August. He visited mother weekly at her residential treatment center, and attended couples counseling with her. At father's request, the adult court set aside the order prohibiting mother from contacting him. Father did not participate in his case plan earlier because he "fell into the drug world" when "they took [his] children away," and he "couldn't get out of that hole." He also had problems with his wife and "didn't even know where to go for the problems."

The juvenile court denied the section 338 petitions to reinstate services, found that the children were adoptable, and terminated parental rights.

DISCUSSION

Father argues that the trial court erred by denying his section 388 petition. We disagree. The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Shirley K*. (2006) 140 Cal.App.4th 65, 71.) The parent bears the burden of showing both a change of circumstances and that modification of the prior order would be in the child's best interests. (*In re S.J*. (2008) 167 Cal.App.4th 953, 959.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount.

5

Rather, . . . 'the focus shifts to the needs of the child for permanency and stability' [citation] . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

In challenging the juvenile court's denial of his section 388 petition, father claims, in essence, that DSS failed to provide him with reunification services. The record belies his claim. Father asserts that "it is troubling that the social worker admitted she never gave the father any referrals for any programs despite having contact with him and knowing his phone number never changed." During the six-month-review hearing, the DSS social worker explained that she did not refer father to SLO programs because he told DSS he wanted his reunification services in Monterey County. From speaking with the Monterey DCFS social worker, DSS knew that DFCS was trying to provide reunification services to father. The DSS social worker regularly called father to discuss his case plan, and advised him to contact the DFCS social worker. DSS tried to accommodate father and mother during the dependency. For example, in April, DSS placed the children in Monterey County, where mother and father then lived, to facilitate their visits. Father testified about the difficulties he faced in trying to get drug treatment. However, he admitted he did not contact his social worker regarding those difficulties.

We also reject father's argument that it "was fundamentally unfair to order [him] to attend a substance abuse assessment and to follow all the recommendations which could and did consist of a full-blown program [on May 24, 2012] just a few weeks before the [June 20, 2012] 6-month review hearing, and then terminate reunification services for non-compliance." Father would be in a better position to make this argument if he had timely notified DSS or the juvenile court of his March 12 arrest. Father knew he was given "a six-month plan to get [his] children back." From its inception in December, that plan expressly required him to stay "free from illegal drugs"; show he could "live free from drug dependency"; and avoid "arrests and convictions." His March 12th arrest suggests he did not meet those requirements. He then failed to notify DSS of his arrest. DSS apparently learned of the arrest from Monterey DCFS in mid-May. On May 24, after learning of father's arrest, the court ordered him to address his substance abuse problems and authorized services so that he could do so. Father would have had

6

more time to comply with that order if he had notified DSS or the court of his arrest in a timely manner.

As the children's attorney argued below, "for 10 months nothing was done," by father while Emily and Vicente went "through a lot," and moved among several foster homes.  At the time of the section 366.26 hearing, their interest in stability was the juvenile court's foremost concern.  (*In re Stephanie M.*, *supra,* 7 Cal.4th at p. 317.)  Father was "in the early stages of his recovery," and the children could not wait longer.  Emily and Vicente were in a foster/adopt home that provided stability.  Substantial evidences supports the court's finding that there had not been a "sufficient change in circumstances to justify changing" its prior orders.  (*In re S.J.*, *supra*, 167 Cal.App.4th at p. 959.)

## DISPOSTION

The judgment (order denying section 388 petition and terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

Linda Hurst, Judge and

Richard Curtis, Retired Judge

Superior Court County of San Luis Obispo

_____

Jack A. Love, under appointment by the Court of Appeal, for M.Z., Defendant and Appellant.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel for Plaintiff and Respondent.